**UNITED STATES of America,**
**Appellee,**

v.

**Frank MOIA, Defendant-Appellant,**
**and**
**Leonard Perry, Defendant.**
**No. 199, Docket 24867.**

United States Court of Appeals
Second Circuit.

Argued Dec. 5, 6, 1957.

Decided Jan. 16, 1958.

Bella V. Dodd, New York City (Dodd, Cardiello & Blair, New York City, on the brief), for defendant-appellant.

John C. Lankenau, Asst. U. S. Atty., S. D. N. Y., New York City (Paul W. Williams, U. S. Atty., and Mark F. Hughes, Jr., Asst. U. S. Atty., New York City, on the brief), for appellee.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and SMITH, District Judge.

J. JOSEPH SMITH, District Judge.

This is an appeal by Frank Moia from a conviction in the District Court, Southern District of New York (J. Skelly Wright, D. J., and a jury) for violation of the federal narcotic laws, 21 U.S.C.A. §§ 173 and 174.

Appellant and a co-defendant, Leonard Perry, were charged in a five count indictment. Counts one through four were based on four separate sales of narcotics in violation of the substantive provisions of the statutes. The fifth count charged them with conspiracy to violate the statutes. Defendant Perry pleaded guilty on all five counts and was sentenced on July 8, 1957 for a term of 15 years. After a three day trial Moia was found guilty on all five counts. A sentence of 10 years on each count, to be served concurrently, was entered on July 25, 1957.

The events recited herein took place in New York City. On April 23, 1957 U. S. Narcotic Agent Bailey, on information from an informer, called Trafalgar 4–9407 and asked for Frankie, apartment 2. Someone was called to the phone, which was located in the hallway opposite Moia's apartment. Bailey introduced himself as "Jimmy from Pittsburgh" desiring to buy heroin. "Frankie" told Bailey to call back that night at Sacramento 2–9511, which later turned out to be the number of one of three pay phones in the rear of the Triboro Lounge, a bar at 100th Street and First Avenue. A call by Bailey at the prearranged time brought the same voice to the phone and resulted in arrangements for delivery of an ounce of heroin through Perry for $400. A second purchase, of two ounces from Perry for $700, was arranged and carried out in a similar fashion on May 8. A call to Frank at the Sacramento number was made by Bailey May 14 at 9:30 p. m., Agent McDonnell having been stationed at the bar by prearrangement. McDonnell identified Moia at the trial as the man who took the call, and testified that Moia spoke with Perry immediately thereafter. No purchase was arranged that day. May 22 another purchase from Perry was arranged by a similar call, and made, this time five ounces of heroin for $1,650. May 28 about 7 ounces were purchased at $300 an ounce, a call to Frank at the Sacramento number proving necessary to confirm the price after Bailey met

Perry. There was testimony by agents that on the night of his arrest Moia admitted talking on the phone with Bailey regarding narcotics and receiving a call at his home from him purportedly from Pittsburgh.

This conviction is attacked primarily because of the use of telephone voice identification. Attack is also made on eyewitness identification of defendant as the person seen entering a phone booth to answer a prearranged call, the witness not having seen defendant before that time, but having defendant's description. Defendant also attacks the charge as insufficient in pointing out the dangers of identification by voice recognition and in definition of aider and abettor, and claims error in the failure to order production of an agent's memos.

▉ The request for production of memoranda which defendant made on trial and which was refused was not for a report made by the agent who was testifying, but for a report given the agent on his request to someone else to check the telephone number, from which he took information for his own report, which latter report counsel had. The Jencks case involved only previous reports of the witnesses, not reports to the witnesses from unidentified sources. Jencks v. U. S., 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103. Where, as here, a witness testifies that such a report was the source of some of his information, there may be occasions when its production should be required to test his credibility, but in the instant case it had no apparent value for such use. The information he testified was so obtained was only as to the nature and location of the building which contained the telephone of the identified number, as to which there was no dispute at the trial. There was no error in refusing the production of that report.

▉ The attack on telephone voice identification and on eyewitness identification is not well taken. Both means of identification used in this case are, of course, quite liable to error, but both are recognized as possible means of identification and their use sanctioned. 2 Wigmore on Evidence, 3rd ed., Sec. 660, 7 id., Sec. 2155. Fabacher v. U. S., 5 Cir., 84 F.2d 602, 604. The government points out that the agent had had some 12 telephone conversations with the person whose voice was later identified through face to face conversation. There was no error in the reception of this evidence. Much is made of conflict between testimony of an agent and that of a representative of the telephone company as to whether the phone called at the Triboro bar, which a man later identified as Moia answered, was in the center or left of three booths. That was a matter of accuracy of recollection to be weighed by the jury, and undoubtedly was sufficiently emphasized in argument. Even if the agent's recollection of the location of the booth was at fault, it would not be ground for reversal, for the jury may well have believed that the agent's positive identification of Moia as the man who answered the prearranged call was correct, whether or not the agent's recollection was accurate as to the booth at which he answered the call. And of course, the jury may have found the agent's testimony of the booth location more accurate than that of the telephone employe. The matter was properly for the jury and forms no basis for a claim of error.

▉ The requested charge on circumstantial evidence was as follows:

"If a conviction is to be based wholly on circumstantial evidence there must be positive proof of facts from which the inference of guilt is to be drawn and the inference of guilt must be the only inference which can be drawn reasonably from those facts.

"United States v. Gasomiser Corp., D.C.Del.1948, 7 F.R.D. 712.

"Circumstances sufficient only to raise suspicion of guilt are insufficient to justify conviction.

"Garrison v. United States, 5 Cir., 1947, 163 F.2d 874.

"Where two conclusions can be drawn from circumstantial evidence, that of either guilt or innocence, the jurors are compelled to draw a conclusion of innocence.

"Kassin v. United States, 5 Cir., 1937, 87 F.2d 183."

The proof here was not wholly circumstantial. In any event, this request was unduly restrictive and has long been repudiated in this circuit, a ruling approved by the Supreme Court in the Holland case, Holland v. U. S., 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. The requirement of proof beyond reasonable doubt operates on the whole case, and is sufficiently covered in the charge as given. The jury is not limited to drawing only the inference most favorable to the accused. United States v. Becker, 2 Cir., 62 F.2d 1007, 1010; United States v. Valenti, 2 Cir., 134 F.2d 362, 364; United States v. Simone, 2 Cir., 205 F.2d 480, 484; United States v. McKee, 2 Cir., 220 F.2d 266, 268; United States v. Austin-Bagley Corp., 2 Cir., 31 F.2d 229; United States v. Gonzales Castro, 2 Cir., 228 F.2d 807, certiorari denied Castro v. U. S., 351 U.S. 940, 76 S.Ct. 838, 100 L.Ed. 1477; United States v. Masiello, 2 Cir., 235 F.2d 279, certiorari denied Stickel v. U. S., 352 U.S. 882, 77 S.Ct. 100, 1 L. Ed.2d 79; Holland v. U. S., 348 U.S. 121, 139, 140, 75 S.Ct. 127, 99 L.Ed. 150. The requested charge on the percentage of probability of identification of voice was properly refused. A judge need not take judicial notice of such claimed facts unless he is satisfied that he is justified in making the desired ruling. The opinions of the claimed experts some years before as to the probability of voice recognition under given circumstances hardly would justify the judge in assuming the matter to be so notorious that it would not be disputed. The circumstances assumed in the proposed instruction, such as the amount of noise in the bar, were not established by evidence, and were certainly not undisputed. Since the request was not for the admission of evidence, but for a mandatory instruction that such was the fact, the judge would need to find that it could not fairly be disputed before giving such an instruction. 9 Wigmore on Evidence, 3rd ed. Sec. 2568a.

■ Moia claims that the charge permitted guilt to be established by building inference on inference. There was, however, evidence of constructive possession, upon which the statutory presumption created by 21 U.S.C.A. § 174 may operate. Gallegos v. U. S., 10 Cir., 237 F.2d 694, 697, 698. The charge to this effect was not error.

Moia also attacks the charge on aiding and abetting. This attack is without substance. Taken with the charge as a whole, the jury must have understood that "working together in the sale of narcotics described by the Agent Bailey" meant knowing participation in the supplying of Bailey with illegal narcotics, and aider and abettor was properly defined as "one who assists in the commission of a crime." United States v. Williams, 341 U.S. 58, 64, 71 S.Ct. 595, 95 L.Ed. 747. Moreover, timely objection to the charge was limited to the failure to give the request concerning identification by voice. Amplification of the charge on aiding and abetting was not thought necessary at the time, and should not now be ground for reversal. Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A., United States v. Samuel Dunkel & Co., 2 Cir., 184 F.2d 894, 898, certiorari denied 340 U.S. 930, 71 S.Ct. 491, 95 L.Ed. 671. There is no error in the charge.

The judgment is affirmed.