**UNITED STATES of America, Appellee,**

v.

**Homer Nelson BARCLEY, Appellant.**

**No. 20481.**

United States Court of Appeals, Eighth Circuit.

Nov. 4, 1971.

Aldrich, Circuit Judge, dissented and filed opinion.

Merle Johnson, Sioux Falls, S. D., for appellant.

Richard D. Hurd, Asst. U. S. Atty., William F. Clayton, U. S. Atty., Sioux Falls, S. D., for appellee.

Before ALDRICH,[*] LAY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

■ Homer Nelson Barcley was convicted by a jury on two counts of communicating threats by mail in violation of 18 U.S.C. § 876.[1] He brings this timely appeal contending that the evidence was insufficient to show that the letter which he mailed contained threats of personal injury.[2] We agree and reverse.

The events underlying Barcley's present difficulties began in 1969 when he suffered a conviction for forgery in a state court of South Dakota. Following the trial, the court appointed an experienced and competent South Dakota attorney to represent Barcley on an appeal to the South Dakota Supreme Court.[3]

On September 5, 1969, the day following his court appointment, this attorney interviewed Barcley at the South Dakota State Penitentiary. During the course of this interview, Barcley indicated that he had done some research on his case and that he expected to play an active role in the handling of the appeal. Additionally, Barcley instructed his attorney to file all of the assignments of error which had been prepared by Barcley's trial counsel.

At the close of this interview, the attorney told Barcley that he intended to review the trial transcript before proceeding with the appeal. It is not clear whether he promised to visit Barcley again at the penitentiary to discuss the case further. In his trial testimony, he said that he did not recall making this commitment, but he conceded that he might have said that he would return on September 12, 1969. He did not return for a second meeting.

On September 16, 1969, the attorney wrote a letter to Barcley advising him: (1) that he had entered into a stipulation with the State's Attorney in order to secure additional time for perfecting the appeal; (2) that the assignments of error had been filed; (3) that the record had been settled; and (4) that the only remaining steps of the appeal process were the filing of the brief and oral argument.

On September 20, 1969, the attorney received this response through the mail:

"Dear Mr. Vrooman: The dictation of this communication is necessitated by the fact that your correspondence was received this 17th day of September, A.D.1969, and before too many lines are written, I will remind you of a small part of the conversation that was had at a time when you deemed it necessary to visit me, that you adventated the necessitation of being boss in this case, of which in rebuttal the statement was, that you could be the boss so long as you conformed to precise dictation of just what I wanted in the assignment of error. Now, I don't intend to set around for the four years with a finger in my ass and play the same game that some two bit lawyer thinks he can do, knowing that I am much more qualified than the 12 years that you have in criminal law, plus the three prior lawyers combined.

"Now, again, I will attempt to tell you, that when the time came for the second visit, September 12, 1969, that there were additional assignment of

---

1. 18 U.S.C. § 876 reads in pertinent part as follows:

    Whoever knowingly * * * deposits or causes to be delivered * * * any communication * * * addressed to any * * * person and containing any threat * * * to injure the person of the addressee or of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. Since we reverse Barcley's conviction for insufficient evidence, we do not reach his other contentions on appeal.

3. Barcley's trial counsel withdrew after accepting a position with the office of the State's Attorney.

error in which to be presented in court. Plus the fact that I wanted to attack the motion for arrest of judgment and motion for new trial, in and for itself.

"You can, first, stick that stipulation entered into by you, the States Attorney, and the Attorney General, in your trash can. For you can't perfect an appeal without all the factual material being presented.

"Number Two, you God damn well better withdraw the assignments of error until such time as you get all the assignments of error and factual material together.

"Number Three, the record has not been settled. And you better listen to me and not at me you "S.O.B." because I am not playing your game.

"In point of fact, as soon as I can get this case situated around in the position I want you are the first S.O.B. that will go, Sam Sechser will next.

"The remaining two steps you are talking about are not substantiated by letting your ass overload your mouth. For you did not get my ok in sending this to the Supreme Court, which is to say that you better be on your Code of Ethics before you force me into an unsuitable position.

"Signed, Respectfully Submitted,

Homer Barcley."

Sam Sechser, who is mentioned in the letter, served as the prosecutor in the state case against Barcley. Barcley's writing and mailing of this letter served as the basis for his present conviction.

At the close of the government's case, Barcley's counsel moved for a judgment of acquittal. He contended that the letter could not reasonably be construed as a threat of personal injury. Stressing the circumstances surrounding the mailing of the letter, he argued that the language could only be interpreted as Barcley's sharp criticism of the ethical conduct of his attorney and that of the prosecutor for proceeding with the appeal and entering into a stipulation without Barcley's consent. In denying this motion, the trial judge stated: "I suspect that [the language] might be capable of several interpretations, but it seems to me that's a question of fact for the jury to interpret. * * *" [Tr. 92]

In support of the trial court's ruling, the government points to the language of the letter which reads: "you are the first S.O.B. that will go, Sam Sechser will next." The government argues that this language, coupled with its suggested implications, was sufficiently clear to create a question of interpretation for the jury. The government, as did the trial court, relies on the Seventh Circuit's decision in United States v. Prochaska, 222 F.2d 1 (7th Cir. 1955).

In that case, the defendant was indicted on a charge of violating § 876 for mailing the following communication to one Maurice Frank:

"Okay, Maurie, this is it, get it and get it straight because you have only one chance. We want $10,000.00 cash in 10's and 20's to be placed by you in a place designated by us in our next letter. You have 5 to 7 days. If you should wish to contact us please do so by advertising under personals in the Tribune. Please Maurie, make it easy on yourself by cooperating fully." [222 F.2d at 2]

In upholding the trial court's denial of the defendant's motion to dismiss the indictment, the court stated:

Written words or phrases take their character as threatening or harmless from the context in which they are used, measured by the common experience of the society in which they are published. * * * [W]hen [language is] employed by members of our society in context with an extortion demand its necessary implications are precisely clear. [222 F.2d at 2–3]

Thus, in *Prochaska,* the fact that the allegedly threatening language appeared in the context of an extortion note supplied sufficient proof of its minacious

meaning. In effect, the court found the language to be threatening on its face; any possible ambiguity was removed by the context in which it appeared. We deem the presence of the extortion scheme crucial to the *Prochaska* decision.

Here, unlike *Prochaska*, we find no extorsive overtones. We recognize that it is possible to construe the language as threatening injury. There are, however, a number of innocuous interpretations which are equally plausible. One such interpretation is that Barcley intended to file a complaint against his attorney seeking to have him discharged for unethical conduct.[4] This interpretation is consistent with the general tone of the letter, as well as Barcley's final admonition to his attorney that "you better be on your Code of Ethics before you force me into an unsuitable position."

In order to sustain its burden of proof under § 876, the government must present evidence sufficiently strong to establish beyond a reasonable doubt that the communication in question conveys a threat of injury. Where a communication contains language which is equally susceptible of two interpretations, one threatening, and the other nonthreatening, the government carries the burden of presenting evidence serving to remove that ambiguity. Absent such proof, the trial court must direct a verdict of acquittal. *See* United States v. Jones, 418 F.2d 818 (8th Cir. 1969). *See also* United States v. Kelton, 446 F.2d 669 (8th Cir. 1971); Lerma v. United States, 387 F.2d 187 (8th Cir. 1968).

In evaluating the sufficiency of the evidence presented by the government to establish that the language in this case conveyed a threat, we are mindful that the letter communicated a client's dissatisfaction with the services of his attorney. Such communication falls within the purview of the First Amendment whether phrased in the King's English or peddler's French. When First Amendment considerations apply, courts must be careful to distinguish "[w]hat is a threat * * * from what is constitutionally protected speech." Watts v. United States, 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L. Ed.2d 664 (1969).

In *Watts*, the Court considered an issue similar to that presented here, albeit in a different context. There, a speaker at a political meeting said in part:

> And now I have already received my draft classification as 1–A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J. [*Id.* at 706, 89 S.Ct. at 1401]

The speaker was convicted of violating 18 U.S.C. § 871 by knowingly and willfully making a threat to inflict bodily harm upon the President. The Court set the conviction aside, stating: "[T]he statute initially requires the Government to prove a true 'threat.' We do not believe that the kind of political hyperbole indulged in by petitioner fits within that statutory term." *Id.* at 708, 89 S.Ct. at 1401. Continuing, the Court emphasized the context in which the statement had been made.

> The language of the political arena, like the language used in labor disputes, see Linn v. United Plant Guard Workers of America, 383 U.S. 53, 58 [86 S.Ct. 657, 15 L.Ed.2d 582] (1966), is often vituperative, abusive, and inexact. [*Id.* at 708, 89 S.Ct. at 1401–1402.]

We think this comment aptly characterizes the kind of letter a court ap-

---

4. The government argues that this cannot be the meaning of the language because Barcley could not have effected the discharge of the prosecutor, Sam Sechser. This argument fails to recognize that Barcley's letter charges misconduct on the part of all counsel, including the Attorney General of South Dakota, the charges apparently resting on Barcley's misguided feeling that the stipulation and settling of the record constituted a form of connivance among the attorneys to prejudice his chances of success on appeal.

pointed attorney might expect to receive from a dissatisfied client writing from within prison walls.[5]

Barcley's letter, much like the communication in *Watts*, is worded in the rowdydowdy argot of the streets, but it does not clearly convey a threat of injury. Considering the context in which it was written, the principles enunciated in *Watts* strongly suggest that the government must offer something more than the equivocal language present here to establish the communication of a threat. In this case, neither Barcley's attorney nor Sam Sechser testified that he experienced fear upon reading the letter.[6] Under these circumstances, we conclude that the government failed to prove Barcley's guilt beyond a reasonable doubt. Accordingly, we direct the district court to enter a judgment of acquittal.

ALDRICH, Circuit Judge (dissenting).

This does not seem a very serious letter, and I am not particularly troubled by the result. All of the circumstances known to the recipient must be considered, and possibly it could be ruled as a matter of law that defendant's remarks were merely forceful adjuration to counsel, combined with letting off steam. But that is not the court's approach, and I am in disagreement with its reasoning.

18 U.S.C. § 876 makes criminal the sending of threatening letters through the mails. To start with the last paragraph of the court's opinion, it would seem of marginal significance whether the addressee and the prosecuting attorney were or were not in fact put in fear. A threat is an "expression [which] in its context [has] a reasonable tendency to create apprehension that its originator will act according to its tenor." Landry v. Daley, N.D.Ill., 1968, 280 F.Supp. 938, 962, rev'd on other grounds sub nom. Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696. The question should be its effect upon an ordinary reasonable man in the position of the recipient, not whether he in fact happens to be chicken- or lion-hearted. United States v. Holder, D.Mont., 1969, 302 F.Supp. 296, 302, aff'd, 9 Cir., 427 F.2d 715. With this caveat, I do not object to the admission of the recipient's reaction as a possible aid to the jury. My real difficulty is with the court's taking the case from the jury on the ground that the government failed to meet its burden of proof. Its position seems to be that since the letter can be read two ways, "the government carries the burden of presenting evidence serving to remove that ambiguity," and its failure to do so is fatal to its case. If the court takes the burden of proof route, and holds that in any case where a letter is capable of two meanings the government must fail, this would seem contrary to the principle that although the government's burden is to satisfy the jury beyond a reasonable doubt, it may do so by presenting evidence which permits an inference of guilt even though that evidence could also be found to support an inference consistent with innocence. United States v. Moia, 2 Cir., 1958, 251 F.2d 255, 258; Dirring v. United States, 1 Cir., 1964, 328 F.2d

---

5. Criminal defendants are often hypercritical of the efforts made by appointed counsel on their behalf. *See* United States v. Cotton, 446 F.2d 865 (8th Cir., 1971); Slawek v. United States, 413 F.2d 957, 958 (8th Cir. 1969).

6. In prosecutions for extortion, proof of the effect of an allegedly threatening communication upon the victim may be crucial. United States v. Kennedy, 291 F.2d 457, 458 (2d Cir. 1961); *see also* Bianchi v. United States, 219 F.2d 182 (8th Cir.), *cert. denied*, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955); Nick v. United States, 122 F.2d 660 (8th Cir.), *cert. denied*, 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550 (1941). Similarly, in a case of this kind, it seems that proof of the effect of an allegedly threatening letter upon the addressee would throw light upon the intent of the sender within the context of the dialogue between the parties to the correspondence.

512, 515, *cert. denied,* 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052; *cf.* Holland v. United States, 1954, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150. I will not extend the citations, but no circuit has held otherwise, except possibly the Fifth.

If the court is merely saying that normally a jury may choose between two meanings, but in this particular case both are so equally plausible that it could not, even this would seem to invade the jury's province. Where a question is a simple one of fact or non-fact, just as evidence may point equally in both directions, so may inferences. But in the area of construing a written instrument such total ambivalence should be rare. *See* Meyers v. Selznick Co., 2 Cir., 1966, 373 F.2d 218, 222–223. I cannot think that the question whether a letter is reasonably calculated to induce fear or bodily harm is to be resolved in terms of burden of proof, preventing a jury from finding this to be its effect so long as by one interpretation it could be found to have an innocent meaning. A writer of threats may be intentionally indirect—indeed, much criminal argot is not peddler's French, but is elliptical and euphemistic. I believe that where defendant's counsel and the U. S. Attorney "will go" should be open to the jury's determination just as much as it could find the proposed destination if they were promised to be "taken for a ride." One need only ask whether an addressee would necessarily be at ease if his lawyer told him, "Yes, that certainly reads like a threat to me, but there is another possible interpretation, so you should forget it."

It is unfair to a defendant to find him guilty if the evidence presented is not persuasive beyond a reasonable doubt, but when he selects language that may fairly be thought threatening, the choice was his. Under the court's rule anyone wily enough to leave an ambiguity may write whatever he wants.