**UNITED STATES of America, Appellee,**

v.

**Mark A. SALAZAR, Appellant.**

**No. 74–1337.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1974.

Decided Nov. 5, 1974.

---

R. Steven Brown, Asst. Federal Public Defender, Springfield, Mo., for appellant.

Donald R. Cooley, Asst. U. S. Atty., Springfield, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, BRIGHT, Circuit Judge, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The appellant (hereafter defendant) was tried for striking Nurse Newby, on duty at the United States Medical Center, Springfield, Missouri, in violation of 18 U.S.C. § 113(d).[1] He was found guilty of the charge and sentenced to six months imprisonment, consecutive to the sentence he was then serving.

He appeals to us upon two grounds. The first is that he did not, indeed "could" not have struck the nurse, due to his restraint at the time. The incident out of which the charge arose occurred in connection with the post-operative treatment of the defendant. He had played a great deal of football and had developed a knee condition which required surgery. Following the operation he had initially been given morphine for pain but as time passed this was "worked down" to Demerol and then to Talwin, drugs of lesser potency for the control of pain.

On the evening in question he was in pain and requested Mr. Kennedy, a senior correctional officer specialist, that he be given morphine. This was refused. Not only because "we cannot give him the shot unless it is time for it" (he was some thirty minutes early in his request), but also, according to the nurse, because the Officer of the Day (the doctor on call), when not a surgeon, "will not change the surgeon's orders."

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. 18 U.S.C. § 113 provides in part:
Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

    *      *      *      *      *

  (d) Assault by striking, beating, or wounding, by fine of not more than $500 or imprisonment for not more than six months, or both.

74

Thus, explained the nurse, it would do no good to call the Officer of the Day. The defendant replied that if he did not get medication he was going to take his cast off, which he later proceeded to do, tearing chunks off the cast and throwing them about the room. Nurse Newby and Officer Kennedy were summoned. Officer Kennedy administered a tranquilizer and attempted to place restraints (leather straps attached to the frame of the bed) on the defendant. One of the restraints, a cuff, was too big and, as Nurse Newby slid it up the arm to demonstrate its looseness, she states that defendant doubled up his fist and struck her with such force that she suffered a hernia, required surgery, and was out of work for approximately two months. She also submitted a claim for compensation. Officer Kennedy's account was corroborative. He says that as the nurse sought to move the cuff the defendant characterized her as a "damned bitch," doubled up his fist, and struck straight from the shoulder.

■ The defendant denies the striking. He testified that, due to his restraints, he "couldn't do it, even if I wanted to." Three inmates who claimed to be present supported defendant by testifying that they did not see any blow struck. Officer Kennedy and Nurse Newby acknowledged that defendant's arm movement was restricted and disagreed on whether the scope of the allowable movement was a matter of feet or inches. It is clear, however, that the cuff was loose, as noted above, and its "purpose was not to restrain him to where he couldn't move at all, only to keep him from removing the cast from

his leg." Defendant urges that reversal is required because the "weight of the evidence * * * indicate[s] that [he] could not have hit Nurse Newby due to the restraints which limited movement of [his] arms." But it is not our function to weigh the evidence; the resolution of this conflicting testimony, involving, as it does, a question of the witnesses' credibility, and of the range of movement necessary for a football player's blow to cause injury to a five foot three or four inch nurse weighing about 122 pounds, was peculiarly for the trier of fact. On the record before us, we cannot say that the trial judge's finding that defendant struck Mrs. Newby was unsupported by substantial evidence. United States v. Rischard, 471 F.2d 105, 107 (8th Cir. 1973); see United States v. May, 419 F.2d 553, 554–555 (8th Cir. 1970).

We find no real issue of intent. Although not raised directly, however, it may lurk in the questions asked Mr. Kennedy by defense counsel, to one of which he responded "Sometimes they [patients] are very violent when you are trying to put restraints on them." In addition, the defendant himself testified, as we noted in part, that he didn't strike her, that he "couldn't do it, even if I wanted to," since due to his restraints his permissible arm movement was limited, and at the most "I heard her voice and I jerked my arm."

■ Even should we consider the issue as raised from the above, defendant's further testimony disposes of it. For, whatever "jerking" may have occured was away from the nurse.[2] We are confronted again with the bald con-

2. (Questioned by Government counsel):
Q. * * * [D]id they slap you?
A. No, I say I feel somebody touch me, all right? Okay. I heard her voice and I just jerked my arm away.
Q. Jerked it away?
A. Yes, sir.
* * * * *
Q. * * * Did you ever push your hand towards Maureen Newby?
A. No, sir, I did not push my hand towards Mrs. Newby.

Q. Did you do anything other than just jerk your hand back from her?
A. Yes, sir.
Q. What else did you do?
A. I probably cussed.
Q. I mean physical in your movements.
A. No, sir, I can't do nothing.
Q. Then Maureen and Mr. Kennedy are both mistaken?
A. Well, like I tell you, I can't comment on that, you know. I know I didn't hit her, right?

tradiction between defendant's story, that he withdrew his arm from the nurse's touch, and that of the Government witnesses, that he delivered a blow with his doubled fist straight at the nurse, who was (to him) a "damned bitch," with such force as to cause a rupture requiring surgical repair. We cannot say the trial court erred in rejecting defendant's story by concluding "The defendant's act of striking Mrs. Newby was due entirely to his anger, and was violent and intentional."

We would not be understood as being insensitive to the situation of the defendant. He was unquestionably in pain, and, in his judgment, the prescribed medicine was inefficacious. To one in such a situation a refusal to take any steps to alleviate the pain because the hour had not struck and a surgeon was unavailable would seem needlessly rigorous. We are satisfied that the Medical Center will review its procedures in the light of this incident and within the context of its heavy medical and security obligations, particularly with a view to the avoidance of unnecessary hazards, not only to the staff, but to the inmates. We do not, it is hardly necessary to add, condone such conduct as we here review, despite the circumstances presented.

Defendant's second issue on appeal is that the sentence imposed constituted double jeopardy since he had lost sixty-seven days earned "good time" through administrative disciplinary action as a result of the offense.[3] This charge is repeatedly made in institutional situations and is repeatedly rejected. Hutchison v. United States, 450 F.2d 930 (10th Cir. 1971) (and cases cited therein); see Pagliaro v. Cox, 143 F.2d 900 (8th Cir. 1944). We find no merit to defendant's attempt to distinguish the decided cases on the ground that they involve "more serious" offenses for which administrative action is inadequate, whereas here defendant's offense was merely "petty," 18 U.S.C. § 1(3).

BRIGHT, Circuit Judge (concurring):

I concur in the perceptive opinion of Judge Smith. However, I retain some reservations as to the sufficiency of the Government's proof on the issue of intent. The testimony of various witnesses, including the two witnesses for the Government, conclusively establishes that Salazar [1] experienced severe pain at the time of the incident. In my view of the record, Salazar's tearing of his cast represented an attempt to alleviate the pain and swelling secondary to his surgery rather than an act of insubordination. The torture of unremitting and unrelieved pain can and often does produce bizarre reactions upon human behavior.

An inference of intent supporting the assault charge comes from the defendant's utterance of the expletive "You bitch," at approximately the same time Ms. Newby was struck. Yet, even the inference of intent to be drawn from this statement is tempered by Salazar's ready concession of this statement and other evidence that Salazar repeatedly used profane language during the entire incident. We might note that peddler's French rather than king's English is the likely argot within prison walls. Cf. United States v. Barcley, 452 F.2d 930, 933–934 (8th Cir. 1971). An additional factor mitigating intent is the concession of a Government witness that patients are sometimes "very violent when you are trying to put restraints on them."

If I were the factfinder in this case, I would acquit. The Government's failure to present persuasive evidence relating to Salazar's intent to harm Nurse Newby coupled with the extenuating circumstances recited above leads me to doubt

---

3. 18 U.S.C. § 4165 provides:
   If during the term of imprisonment a prisoner commits any offense or violates the rules of the institution, all or any part of his earned good time may be forfeited.

1. Salazar is serving a three-year sentence for possession of heroin. He testified that he became addicted to narcotics while in the Armed Forces.

whether the blow struck was intentional. But, the prerogative of determining credibility and drawing inferences from conflicting evidence rests with the trier of fact—judge or jury. In his evaluation of the evidence, Judge Collinson ruled for the Government. I am unable to say that this decision is so completely unsubstantiated by the evidence as to warrant reversal.

Although I agree to an affirmance, I deem very appropriate Judge Smith's critical comments on the Medical Center's procedures for responding to a patient's request for relief from pain. If a surgeon is officer of the day (OD), a request by a surgical patient for an effective pain killer [2] is routinely transmitted to the OD. However, if the OD happens to be a nonsurgeon medical officer, as was the case on the day in question, the surgical patient's request is not forwarded to the OD. Thus, whether a prisoner-patient's request for a more adequate pain killer comes to the attention of a doctor depends not on his medical condition, but on which type of physician has drawn OD duty. The logic of this procedure for the care of prisoner-patients at the Federal Medical Center escapes me. I am quite certain that such a procedure would not be tolerated in a hospital in a nonprison setting. I am unable to perceive why, merely because a sick person is a federal prisoner, he should be subject to unnecessary suffering for long periods of time without recourse merely because of a highly dubious hospital administrative procedure.

The trial court sentenced Salazar to serve an additional six months in prison, the maximum authorized under 18 U.S. C. § 113(d). In light of our comments above focusing upon Salazar's unrelieved suffering at the time of the incident in question, in part related to a denial to him of the opportunity for medical attention, the trial court may wish to consider whether these circumstances justify mitigation of punishment or probation. Without intending any encroachment upon the sentencing prerogatives of the trial judge, I would suggest reconsideration of this sentence under Fed.R. Crim.P. 35.

Affirmed.

---

2. The record reflects that the medication which had been prescribed for Salazar on the day in question was Talwin, a drug slightly more effective than aspirin.

