**UNITED STATES of America, Appellee,**

v.

**Marvin Clyde LINCOLN, Appellant.**

**No. 78–1532.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1978.

Decided Jan. 9, 1979.

Dennis Neil Smith, Clayton, Mo., for appellant.

* The Honorable James K. Logan, Circuit Judge, United States Court of Appeals for the Tenth Circuit, sitting by special designation.

** The Honorable Talbot Smith, United States Senior District Judge for the Eastern District of Michigan, sitting by special designation participated in the post-argument conference and concurred in this opinion prior to his death on December 21, 1978.

1. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri.

David M. Rosen, Asst. U. S. Atty., St. Louis, Mo., for appellee; Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on the brief.

Before McMILLIAN and LOGAN,* Circuit Judges, and SMITH,** Senior District Judge.

PER CURIAM.

■ Defendant Marvin Clyde Lincoln appeals from a judgment entered in the District Court for the Eastern District of Missouri[1] upon a jury verdict finding him guilty of two counts of mailing threatening communications in violation of 18 U.S.C. § 876. Defendant was sentenced to a term of twelve years imprisonment for Count I and an additional term of three years imprisonment for Count III, said sentences to run consecutively.[2] Count II was dismissed.

For reversal defendant argues (1) the district court erred in accepting the jury verdict finding him guilty as to Count I because the attempted extortion was impossible and (2) the letter that formed the basis of Count III was a communication protected by the first amendment. For the reasons discussed below, we affirm the judgment of the district court.

At trial the parties stipulated that two letters (Exhibits 1A and 2A) were received in the mail by the Clerk of the U. S. Court of Appeals for the Eighth Circuit. It was further stipulated that the letters and envelopes were written and addressed by defendant and that defendant's fingerprints appeared on the letters and envelopes. Defendant's name and prison registration

2. The total sentence of fifteen years imprisonment, although within the statutory maximum, seems rather harsh in light of the circumstances shown at trial. It is, however, not the function of this Court to substitute its judgment for that of the district court with respect to sentencing. E. g., United States v. Sand, 541 F.2d 1370, 1378 (9th Cir. 1976), cert. denied sub nom. Scully v. United States, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 553 (1977); United States v. Prince, 533 F.2d 205, 209 (5th Cir. 1976). See also Fed.Rules of Crim.Procedure Rule 35.

number appeared on the outside of the envelopes. Special agents of the FBI testified for the government. Defendant in Exhibit 1A, dated September 27, 1977, threatened to kill the judges of the Eighth Circuit. This letter also contained bitter references to defendant's dissatisfaction with the appellate process. We note that defendant's appeal from an unrelated conviction had just been affirmed by the Eighth Circuit. Defendant in Exhibit 2A, received February 24, 1978, demanded payment of $700,000 to secure the release of specified members of the Charles Manson family and threatened to kill the judges unless his demands were satisfied within ten days.

Defendant testified on his own behalf and admitted writing these particular letters as well as several other threatening letters. Defendant denied any intent to threaten any person or to extort money and stated that the letters were written in an attempt to secure a transfer to another institution and to remain in protective custody. Defendant testified that the letters were unsealed and were not deposited in a prisoner's mail box but left in-between the bars of his prison cell. Defendant also testified that at the times he wrote the letters he understood he was under central monitoring, a status of close supervision and isolation which includes the censoring of prisoner mail, and never thought the letters would actually be mailed. Defendant was aware, however, that letters left in-between the bars of his cell were picked up by guards as part of the prison's normal procedures.

As developed at trial, defendant had apparently cooperated with prison authorities at the Missouri State Penitentiary in a narcotics investigation and feared for his life because several inmates at Leavenworth had been the focus of that investigation. In addition, there was evidence defendant had been assaulted several times while in prison. For these reasons, defendant wanted to be transferred and isolated from the general prison population and to achieve that end had written the letters.

Defendant first argues the district court erred in accepting the jury verdict finding him guilty as to Count I because the attempted extortion was impossible. Defendant recognizes that this Circuit has held factual impossibility is not a defense, see *United States v. Frazier,* 560 F.2d 884, 888 (8th Cir. 1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978), but urges the Circuit to adopt the doctrine of "inherent impossibility," *citing People v. Elmore,* 128 Ill.App.2d 312, 261 N.E.2d 736 (1970). Defendant argues the threatened extortion was inherently impossible because at that time he was in prison and could not accomplish the threatened action, could not receive any large sums of money while in prison, and never actually intended to injure anyone or extort money. We do not agree.

The offense of mailing threatening communications requires proof of only two elements: (1) that the defendant wrote a threatening letter and (2) that the defendant knowingly caused the letter to be forwarded by the United States mail. See *United States v. Sirhan,* 504 F.2d 818, 819 (9th Cir. 1974); *Petschl v. United States,* 369 F.2d 769, 770 (8th Cir. 1966). The government does not have to establish that the defendant in a particular case had the actual capability to successfully accomplish the threatened action. The Fourth Circuit recently addressed a similar question of impossibility and held that proof of intent to carry out the threat is not required. *United States v. Chatman,* 584 F.2d 1358, 1361 (4th Cir. 1978).

Furthermore, the question of defendant's intent was an issue of fact for the jury to resolve. See *United States v. Maisonet,* 484 F.2d 1356, 1357 (4th Cir. 1973) (whether language which defendant argued was merely a complaint about official conduct constituted a threat to injure held to be an issue of fact for the jury); *Kendrick v. United States,* 367 F.2d 632, 633 (9th Cir. 1966) (defendant's challenge of the sufficiency of the evidence of intent on the ground he never believed the letters would get by the prison censors and be mailed held

to raise an issue of fact for the jury). The evidence presented in the present case was sufficient to support the jury's verdict. As stipulated, defendant wrote the letters and the letters were received in the mail. Although defendant testified he had no intent to injure or extort when he wrote the letters, the words of the letters by themselves and in context clearly threatened to kill the judges and demanded money and the release of other prisoners. *See United States v. Carvin,* 555 F.2d 1303, 1305 (5th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977); *United States v. Prochaska,* 222 F.2d 1, 2 (7th Cir.), *cert. denied,* 350 U.S. 836, 76 S.Ct. 73, 100 L.Ed. 746 (1950).

■ Defendant's second argument is that the letter written September 27, 1977, which formed the basis for Count III, was a communication protected by the first amendment. *See Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969); *United States v. Barcley,* 452 F.2d 930 (8th Cir. 1971). This argument is without merit. In so holding, we do not mean to imply that the first amendment is not a legitimate defense. In our opinion, defendant's reliance upon *Watts* is misplaced. In *Watts* the defendant was a speaker at an anti-war demonstration who said "[i]f they ever make me carry a rifle the first man I want to get in my sights is [the President]." 394 U.S. at 706, 89 S.Ct. at 1401. The Supreme Court set aside his conviction for knowingly and willfully making a threat to inflict bodily harm upon the President, 18 U.S.C. § 871(a), characterizing the defendant's statement as crude "political hyperbole" and not a threat within the meaning of the statute. *Id.* at 708, 89 S.Ct. 1399. The facts in the present case in no way raise similar issues of free speech and political expression. Although defendant's letter bitterly denounced the appellate process and stressed what defendant viewed as judicial indifference to the suffering of prisoners and their families, the letter also contained explicit threats. This criticism of the court at most raised an issue of fact for the jury as to the nature of the letter, a fact which the jury resolved against de-

fendant. *See United States v. Maisonet, supra,* 484 F.2d at 1359 (whether language in letter was protected criticism of public official).

The facts presented herein are distinguishable from those presented in *Barcley.* In *Barcley* Judge Bright required the government to furnish additional evidence that the language constituted a threat because the alleged threat was ambiguous and raised the question of first amendment protection. 452 F.2d at 932. In the present case, the language was not ambiguous, the letter was not a communication from a dissatisfied client to his court-appointed attorney, and, unlike the threatened defense attorney and prosecutor in *Barcley* who testified they did not feel threatened after receipt of the letter, the court personnel took defendant's letter very seriously and turned the matter over to the FBI for further investigation.

The judgment of the district court is affirmed.