UNITED STATES of America, Plaintiff,

v.

David S. TAYLOR, Defendant.

No. 90–6189–CR.

United States District Court, S.D. Florida.

March 7, 1991.

Richard Murad, Asst. U.S. Atty., Office of U.S. Atty., Miami, Fla., for plaintiff.

Victor Martinez, Office of Federal Public Defender, Miami, Fla., for defendant.

## ORDER ON MOTION FOR JUDGMENT OF ACQUITTAL

ROETTGER, District Judge.

This prosecution for mailing a "threat" involves rather bizarre behavior of Defendant. The evidence presents a tragicomedy from a Theater of the Absurd. The question is whether the letters were a threat.

Defendant went "steady" with Kathleen McHugh in a high school near Chicago. She tried to break off the romance, but Defendant couldn't accept it. She moved to Fort Lauderdale to live with her grandmother in order to get away from him. That was in 1969.

In a few years, Defendant located Kathleen again in Coral Springs, an exurb of Fort Lauderdale. By then she was married. A torrent of letters, some bizarre, but always containing some expression of his continuing love, affection, or caring, came to the home of Kathleen and David Goldstein.

Occasionally the Goldsteins moved, assertedly to get away from the Defendant. The Defendant would locate them again and the letters poured in again, occasionally seeking an opportunity to see Kathleen in the hope it would enable him to overcome his admitted obsession with her.[1] She declined by simply not responding.

In 1982, the Goldsteins obtained a restraining order from the state court in Fort Lauderdale to stop the communications and in Kathleen's words "the harassment". Defendant did not restrain himself and continued to flood the Goldsteins with letters.[2]

Finally, two greeting cards were mailed the same day, which formed the basis of the indictment's two counts. Their contents are as follows:

[Count 1]

"Kathleen, Despite the major disruptions that widowhood will bring about in your life I for whatever value I may be will be there for you. David's death from a cerebral vascular accident of an unknown idiopathy will stun all those who loved him. However despair not as I am of the belief his soul will rest comfortably at the side of the heavenly being he alleges to be of. I love you. David. For when winter cometh before the spring sing ye the songs of astonishment and bewilder not with bereavement for as I write the forgiver receive no punishment and David your Husband of thee we sing he was the man who dared to be King."

[Count 2]

"Kathleen. Your Husband, David Goldstein will have his health take a turn for the worse this Christmas Season and you will be widowed in 1990. I am truly sorry that this is the "Kay Ser Ra Ser Ra"[sic] scenerio[sic] that has to take place. However, you will allways[sic] be the foci of my desires as I remember you to be the most exuisite[sic] creature that has ever taken me in. I'm always grateful that we have had the moments given to us and I will be there should you ever desire me again. I can say with all sincerity, I Love You. David S. Taylor."

There is no evidence that Defendant has ever threatened to shoot or stab Kathleen Goldstein or her husband, David.

Defendant moved to have the court try the case without a jury; so did the government twelve days before the trial. This court declined as a matter of personal policy.

At the close of government's case Defendant moved for a judgment of acquittal under Rule 29. This court, resolving all doubts in favor of the government, denied the motion but stated its intention to reserve ruling under Rule 29(b) if it submitted the case to the jury.

---

1. When Mrs. Goldstein took the stand, Defendant audibly gasped: "That's not her".

2. One of defendant's letters contained the following, perhaps insightful, comment:

"What the hell, at least I will be topical conversation at a class reunion or the like. You remember Dave Taylor, well he went bananas over that girl he went in high school with. What a stupid son-of-a-bitch he was."

Defendant put on no evidence, rested his case, and again moved under Rule 29 for acquittal.

This court reserved ruling under Rule 29(b).

## CONCLUSIONS OF LAW

The first test confronting the trial judge in a prosecution under 18 U.S.C. § 876, para. 3, is to determine whether the letter is a threat.

A reasonably clear distinction between letters that are threats and those that are ambiguous emerges from case law.

## THREATENING LETTERS

Examples of letters found to be threats are set forth as follows:

(A)

"I may have to do all my ten (10) years, but if I ever get out of here and nothing happens to me while I am in here, you will never be able to be prejudice [sic] and racist against another Puerto Rican like me."

*U.S. v. Maisonet*, 484 F.2d 1356, 1357 (4th Cir.1973).

(B)

"I don't know if the Abuchon's told you are [sic] not, but the reason their sister is in her grave, and I am in prison, is because of the arguments we had over the custody of this child.

I don't need any Court to vacate the adoption, when you stop and think about it. But, I prefer to seek Judicial relief if possible. When there is no remedy left, then I'll go for broke, should that happen, we will all burn in hell together.

I'm trying to do the Abuchon's a favor. They best realize that. I'm 42 years old, and I'll not be locked in prison the rest of my natural life. They best think about it. Their sister did't!!![sic]"

The court continued:

Martin, having killed his wife (the sister of the Abuchons), in making the statements in the [above] letter directed to Bronson [attorney], cannot claim that the above paragraphs of the letter are in any way ambiguous.

In the defendant's letter to Judge Gaertner, the following language appears:

"You see sir, without my child, I just don't really give a [expletive deleted] about life, therefore, if it be necessary, I will vacate the adoption without the aid of the Court, and in so doing I got no scruples." "I have tried legally to vacate the adoption, the reason for that is because god only knows I do not want any more trouble. But sir, you son of a bitch, I'll see you in hell before I permit you to do this to me and my son.

You best think about the seriousness of this matter before its to late. I'm telling you this because I mean every word of it. If you care anything at all about the child and others involved you best do something. They can't keep me in Texas forever, and Mister You and Dean or[sic] the two I hold personally responsible.

I don't care what happens to me so long as I know you didn't enjoy your immunity. And you want![sic]"

*Martin v. U.S.*, 691 F.2d 1235, 1239 (8th Cir.1982).

(C)

Similarly, "This letter stated that Mrs. Thompson was "marked to die" and went on to say that a "pardner" of Raymer's would "take care of you and Mr. Gene Loper my parole officer in Jackson, but if he don't I promise you I will." ("Letter 2"). This letter was the basis of count II. Another letter to Mr. Loper, which was the basis of count IV, stated that "when I get out this time I'm killing you," and then went on to threaten to torture and kill Mr. Loper's family should Loper die before Raymer was released ("Letter 4")." *U.S. v. Raymer*, 876 F.2d 383, 385 (5th Cir.1989).

## AMBIGUOUS LETTERS

Conversely, ambiguous letters require an acquittal.

"Dear Mr. Vrooman: The dictation of this communication is necessitated by the fact that your correspondence was received this 17th day of September, A.D. 1969, and before too many lines are written, I will remind you of a small part of the conversation that was had at a time when you deemed it necessary to visit me, that you adventated the necessitation of being boss in this case, of which in rebuttal the statement was, that you could be the boss so long as you conformed to precise dictation of just what I wanted in the assignment of error. Now, I don't intend to set around for the four years with a finger in my ass and play the same game that some two bit lawyer thinks he can do, knowing that I am much more qualified than the 12 years that you have in criminal law, plus the three prior lawyers combined.

"Now, again, I will attempt to tell you, that when the time came for the second visit, September 12, 1969, that there were additional assignment of error in which to be presented in court. Plus the fact that I wanted to attack the motion for arrest of judgment and motion for new trial, in and for itself.

"You can, first, stick that stipulation entered into by you, the States Attorney, and the Attorney General, in your trash can. For you can't perfect an appeal without all the factual material being presented.

"Number Two, you God damn well better withdraw the assignments of error until such time as you get all the assignments of error and factual material together.

"Number Three, the record has not been settled. And you better listen to me and not at me you "S.O.B." because I am not playing your game.

"In point of fact, as soon as I can get this case situated around in the position I want you are the first S.O.B. that will go, Sam Sechser will next.

"The remaining two steps you are talking about are not substantiated by letting your ass overload your mouth. For you did not get my ok in sending this to the Supreme Court, which is to say that you better be on your Code of Ethics before you force me into an unsuitable position.

*U.S. v. Barcley,* 452 F.2d 930, 931 (8th Cir.1971).

Although not a case involving § 876, para. 3, there is some tangential value in *Watts v. U.S.,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). In *Watts* the defendant was convicted of making a threat to inflict harm upon the President, under 18 U.S.C. § 871(a), affirmed by the Court of Appeals, and then reversed by the Supreme Court. Defendant had uttered the following at a meeting:

"They always holler at us to get an education. And now I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J."

Id. at 706, 89 S.Ct. at 1401.

■ And perhaps the closest case to using defendant's arcane language and a prediction about an unanticipated stroke or bad health to befall Mr. Goldstein was stated in Justice Douglas' concurring opinion in *U.S. v. Watts,* as follows:

"in the time of Edward IV, one Thomas Burdet who predicted that the king would "soon die, with a view to alienate the affections" of the people was indicted for "compassing and imagining of the death of the King," 79 Eng.Rep. 706 (1477).... 394 U.S. at 709, 89 S.Ct. at 1402.

■ The first test for a trial judge is whether the letter is ambiguous. If so, the rule as set forth by the 8th Circuit case of *Martin v. U.S., supra* applies: "An ambiguous letter cannot violate 18 U.S.C. § 876", citing *U.S. v. Barcley,* 452 F.2d 930 (8th Cir.1971). The trial judge should, of course, grant the Rule 29 motion in those cases, as the court held in *Barcley.*

■ If the letter is not ambiguous and contains a threat, then the matter should be submitted to the jury, as was done in all of the cases listed, supra, in the threats

grouping, i.e., *Martin, Maisonet,* and *Raymer.*

In the instant case the letters on which Counts 1 and 2 are based are clearly ambiguous.

In summary, this court erred in not granting Defendant's motion for acquittal at the close of the government's case. However, Defendant rested without presenting evidence and this court reserved ruling under Rule 29(b). Consequently, this court is not quarreling with the jury's verdict, but addressing the question of law on which the court reserved ruling.[3]

THEREFORE, this court, having reserved ruling under Rule 29(b) GRANTS defendant's motion for judgment of acquittal.

DONE AND ORDERED.

---

**3.** It's impossible to avoid a feeling of sympathy for the Goldsteins. They have had to endure years of "harassment" in the form of unwanted letters.

An injunction such as the Goldsteins obtained in state court is appropriate; a felony conviction for an ambiguous letter is not.

In hindsight, judging from Defendant's clearly audible exclamation upon seeing Kathleen McHugh Goldstein in the witness stand: "that's not her", one can't help but wonder if he was imagining someone different and it might have broken his "spell" if she had talked with defendant during the last 20 years.

Incorrect expectations of high school classmates are usually funny at 20th year high school reunions; this has been a tragedy for both the Goldsteins and defendant Taylor.