**UNITED STATES of America, Plaintiff,**

v.

**Loren Francis BELLRICHARD, Defendant.**

**Crim. No. 4–91–25.**

United States District Court, D. Minnesota, Fourth Division.

Nov. 27, 1991.

**456**

Elizabeth de la Vega, Asst. U.S. Atty., for plaintiff.

Scott Tilsen, Federal Public Defender, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

On October 9, 1991, following a four week trial, the jury returned a verdict finding defendant guilty on counts 4, 7, 9, 14, and 16 of mailing threatening communications in violation of 18 U.S.C. § 876, not guilty on nine other counts of mailing threatening communications, and not guilty on two counts of damaging buildings with an explosive device in violation of 18 U.S.C. § 844(i). Before the court are defendant's motions for a judgment of acquittal on the counts of conviction pursuant to Fed. R.Crim.P. 29, for a new trial pursuant to Fed.R.Crim.P. 33, and for an arrest of judgment pursuant to Fed.R.Crim.P. 34. The parties have briefed these motions and, in response to the direction of the court, have submitted supplemental briefs on the issue of third party threats.

■ Defendant's motion for judgment of acquittal under Rule 29 focuses on the sufficiency of the evidence. Such a motion should only be granted "where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged." *United States v. Bredell*, 884 F.2d 1081, 1082 (8th Cir.1989). The essential elements of the crime may be proven by circumstantial as well as direct evidence, and the evidence need not exclude every reasonable hypothesis except guilt. *Id.*

■ A motion for a new trial under Rule 33 should be granted if the evidence weighs sufficiently heavily against the verdict so that a serious miscarriage of justice may have occurred. *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir.1980). The court need not view the evidence in the light most favorable to the verdict, but may weigh the evidence and evaluate the credibility of witnesses. *Id.* The authority to grant new trials "should be used sparingly and with caution." *Id.* Defendant raises various grounds for a new trial: the weight of the evidence, the court's decision not to supplement the jury instructions in response to a question from the jury, the overbreadth of 18 U.S.C. § 876 in light of the First Amendment, and the joinder of counts one and two (use of explosives) with counts three through sixteen (mailing threatening communications).

■ Defendant moves for an arrest of judgment under Rule 34 on the grounds that the offenses charged do not state an offense against the United States and violate the First Amendment, and that the court did not have jurisdiction over the offenses charged.

Defendant's motion for judgment of acquittal on counts 4, 7, 9, and 16 should be denied. There is evidence supporting the existence of each of the essential elements of the crimes charged. There is no dispute that the defendant wrote and mailed these four communications. He contends, however, that the writings do not express true threats, an essential element of the crime.

The court has reviewed the language of each of these communications, and determines that a jury reasonably could conclude that they contain true threats; i.e., that there is language in each expressing an apparent intention to inflict bodily injury upon the addressees. *See United States v. Neavill*, 868 F.2d 1000, 1005–06 (8th Cir.1989); *Martin v. United States*, 691 F.2d 1235, 1240 (8th Cir.1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). The First Amendment also does not preclude conviction on these counts as will be discussed later.

Defendant's motion for a new trial on counts 4, 7, 9, and 16 should also be denied. Under the standards for Rule 33, the evidence does not weigh against the verdict. While there is room for different interpretations of certain phrases used by the defendant, the weight of the evidence supports the jury's verdict on each count. *See Martin v. United States, supra,* 691 F.2d at 1240 (question of whether language constitutes a threat is usually an issue of fact for jury). The jury was instructed on the relevance of the First Amendment in assessing whether the language constituted a threat or protected speech. The jury was also instructed that real threats should be distinguished from idle talk, something said in a joking manner, or exaggerated or extravagant statements. The jury was called upon to apply these instructions in deciding whether the defendant's language was mere political hyperbole or warnings of God's potential retaliation, as he contended. The evidence does not weigh against the conclusion that a reasonable recipient of these communications, familiar with the context, would interpret the language as threats.

 Defendant's other grounds for a new trial on these counts are also unavailing. In response to a question from the jury, the court specifically referred it to the instructions as a whole. This is not a basis for a new trial. *See United States v. Beverly*, 913 F.2d 337, 357 (7th Cir.1990), *cert.*

*denied,* —— U.S. ——, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991). The Eighth Circuit has rejected defendant's argument that the statute is overbroad under circumstances similar to those found here, where the First Amendment was raised as a defense to charges that a communication contained both denunciation of the judicial process and explicit threats. *United States v. Lincoln*, 589 F.2d 379, 382 (8th Cir.1979). There is no basis for a new trial on these grounds.[1] Finally, the joinder of counts one and two with counts three through sixteen did not prejudice the defendant in presenting his defense such that a new trial is warranted. The jury was instructed to consider each count separately. Indeed, the jury acquitted the defendant on the bombing counts and nine of the fourteen counts of mailing threatening communications, indicating that it followed the instructions. In addition, evidence relating to the alleged bombings would have been admissible if the counts had been severed since it would have been relevant to the context in which the communications were sent. *See United States v. Jones*, 880 F.2d 55, 63 (8th Cir.1989). The court concludes that defendant's motion for a new trial should be denied as to counts 4, 7, 9, and 16.

██ Count 14 is another matter. This count involves an alleged threat by the defendant against two judges in a postcard he mailed to Tammy Hoeper, a high school student in Austin, Minnesota. The postcard, mailed May 3, 1989, stated in relevant part:

> I sent Bill Nierengarten anonymously 2 pieces of correspondence in April asking him specifically to go lightly in sentencing Tony Holtorf. Obviously the demented, crooked bastard did not listen to me. The reason I sent them to him anonymously is because the crook would have had me jailed had I signed them. They already framed me once. They better not try it again or else *God* will blow up

---

1. This is the only grounds raised by defendant in his brief in support of his motion for arrest of judgment pursuant to Rule 34. For the reasons stated in the text, this motion should be denied.

both those judges' houses again with them along with it. (emphasis in original). Nierengarten was one of the judges involved in the defendant's earlier harassment conviction in state court. His house had been destroyed by explosion and fire in 1988. The postcard to Tammy Hoeper was sent shortly after damage to the home of another judge who had been involved in defendant's prior criminal case and sentence. Hoeper was the girlfriend of Tony Holtorf, a juvenile who had been handled as an adult and about whom the defendant had written to judges. The evidence at trial showed that the defendant felt a certain solidarity with Holtorf and Hoeper as fellow victims of the system.

There is a serious question whether the statute may be applied to this mailing consistent with the First Amendment. The statute extends to any "threat to injure the person of the addressee or of another." Since the defendant mailed a postcard to Ms. Hoeper which contains language similar to that found threatening in counts 4, 7, 9, and 16, it would, at first glance, seem reasonable to apply the statute to this card. The distinction between the mailings in count 14 and the other counts of conviction is that the mailing in count 14 discussed consequences to third parties rather than the addressees. A key issue is whether this distinction should make a difference on defendant's motion for judgment of acquittal. How far may the statutory phrase "or of another" be constitutionally extended? While the legal issues related to this count were briefly addressed at the time of trial, the court requested further briefs after the filing of the post-trial motions.

■■■ Although the question of whether the language used constitutes a threat is usually an issue of fact for the jury, *Martin v. United States, supra,* 691 F.2d at 1240, the context of the communication containing the language is relevant to whether a threatening communication has been mailed under 18 U.S.C. § 876. The standard for submitting the charge to the jury is objective and contextual: "If a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury." *Id. See also United States v. Barcley,* 452 F.2d 930, 933–34 (8th Cir.1971) (context of communication as between dissatisfied client and his attorney showed language could not have been threat, judgment of acquittal directed); *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (context in which language was used showed it was political hyperbole, not a true threat).

■■■ The communicative context of speech regulated by 18 U.S.C. § 876 implicates First Amendment concerns. The statute regulates speech. The defendant's speech in this case frequently related to the conduct of public officials in their public duties. Communications about the conduct of public officials have special protection under the First Amendment. "When First Amendment considerations apply, courts must be careful to distinguish '[w]hat is a threat ... from what is constitutionally protected speech.'" *United States v. Barcley, supra,* 452 F.2d at 933, *quoting Watts v. United States, supra,* 394 U.S. at 707, 89 S.Ct. at 1401. In *Watts,* the Court reversed a conviction for threatening the President under 18 U.S.C. § 871. The Court stated: "the statute initially requires the Government to prove a true 'threat.' We do not believe that the kind of political hyperbole indulged in by petitioner fits within that statutory term." *Id.* at 708, 89 S.Ct. at 1401.

In *Barcley,* the Eighth Circuit applied this reasoning in considering a conviction for making a threat under 18 U.S.C. § 876, the statute at issue here. The court held that a letter from a disgruntled client to his appointed attorney was protected under the First Amendment principles articulated in *Watts.* The context of the communication, as between client and lawyer, was relevant in determining that the language used did not convey a threat. The defendant had written to his lawyer complaining about the way the lawyer was handling his appeal. After detailing certain objections, he stated: "In point of fact, as soon as I can get this case situated around in the position I want you are the first S.O.B. that will go,

Sam Sechser will next." *Barcley, supra,* 452 F.2d at 932. Sam Sechser served as the prosecutor in the original case against the defendant. The court wrote: "Considering the context in which it was written, the principles enunciated in *Watts* strongly suggest that the government must offer something more than the equivocal language present here to establish the communication of a threat." *Id.* at 934. The statute should not be construed broadly when First Amendment principles are implicated.

In the present case, the postcard to Ms. Hoeper contains no request that it be communicated to the individuals allegedly threatened. There was no evidence at trial that Ms. Hoeper was likely to understand that the postcard was to be so communicated or that it was likely that it would be. Indeed, there was no evidence that Ms. Hoeper had any connection with the persons allegedly threatened which could make the language used by the defendant in his postcard to her a true threat against those persons. The specific language of the postcard should not be isolated from the whole context of the communication. No reasonable recipient, in light of the context, could interpret the defendant's statements about third parties as a true threat within the ambit of *Watts.* The statute should not be applied under these circumstances, and this count should not have been submitted to the jury.

The interpretation of the statute favored by the government could lead to absurd results since it does not take into account the particular context of third party threats. The First Amendment limits the reach of the statute as to third party threats by requiring consideration of the whole context of the communication. The statute should not be interpreted to cover every letter which, apart from its context, seems to threaten a person other than the addressee or letter recipient, as the government argues. For example, if a prosecutor mailed defendant's letters to another government official for analysis or review, that conduct could be covered by the statute—mailing a threat to injure the person of another.[2] Similarly, if the court mails this opinion to West Publishing Company, having quoted verbatim the language used by defendant which is alleged to be threatening, that conduct could be covered by the statute. Also covered would be the conduct of a member of the general public, who, attending this trial of widespread interest, took notes of defendant's statements and mailed them to a family member, law professor, or newspaper for their information. Of course these results are absurd and reach constitutionally protected speech. More must be required for conviction under the statute. Conviction requires that the communication be "a true 'threat'." *Watts, supra,* 394 U.S. at 708, 89 S.Ct. at 1401. This means that a reasonable recipient, familiar with the context of the communication, would interpret it as a threat. *Martin v. United States, supra,* 691 F.2d at 1240.[3] It is this contextuality which prevents conviction under the hypothetical situations described.

The cases relied upon by the government to support conviction for a third party

2. It is not necessary for conviction that the one who mailed the letter have actually written it, *see e.g., United States v. Bloom,* 834 F.2d 16, 18–19 (1st Cir.1987).

3. In *Martin,* the defendant had earlier been convicted of murdering his wife as a result of a child custody dispute. A sister of the deceased wife and her husband adopted the child, and the defendant sent letters to the attorney who represented the family and to a judge. His letter to the attorney concerned the adoptive parents:

> I don't need any Court to vacate the adoption, when you stop and think about it. But, I prefer to seek Judicial relief if possible. When there is no remedy left, then I'll go for broke, should that happen, we will all burn in hell together.... I'm trying to do [the adoptive parents] a favor. They best realize that. I'm 42 years old, and I'll not be locked in prison the rest of my natural life. They best think about it. Their sister did't!!! [sic].

*Id.* at 1239. He also wrote directly threatening the judge.

The court held that it was proper to have submitted the count involving the third party threat against the adoptive parents to the jury and that the jury verdict should be upheld. It referred to the fact that he had been convicted of a prior murder related to the same custody dispute which he mentioned in the letter.

threat all involved evidence of some connection between the recipient of the communication and the person or persons who were threatened. In *United States v. Schneider,* 910 F.2d 1569 (7th Cir.1990), the defendant wrote to the Illinois Supreme Court that if it did not nullify the orders of a lower court judge, that judge would be nullified. In *United States v. Cotner,* 657 F.2d 1171 (10th Cir.1981), the defendant wrote a letter offering the recipients cash if they would terminate a third person. In *United States v. Reynolds,* 532 F.2d 1150 (7th Cir.1976), the defendant wrote a letter telling a woman to pay $1,000 to a certain individual or her husband would be killed. In *United States v. Khorrami,* 895 F.2d 1186 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 522, 112 L.Ed.2d 533 (1990), the defendant mailed a letter to an office of the Jewish National Fund in which he wrote statements such as "Execute now!" and "Must be killed" over pictures of officers of the Fund as well as Israeli and American public officials. In each of these cases, as in *Martin, supra,* there is a clear connection between the recipient of the communication and the third party being threatened. In the present case, in contrast, there is no evidence of any connection between Ms. Hoeper and the parties allegedly threatened.

The final case cited by the government, *United States v. DeShazo,* 565 F.2d 893 (5th Cir.), *cert. denied,* 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978), involved a third party threat where the connection between the recipient of the letter and the parties threatened is not immediately apparent, since the defendant wrote to a U.S. Magistrate saying he would kill U.S. Senators Robert Dole and Walter Mondale.[4] The case on appeal turned on whether the jury should have been instructed that the government had to prove that the defendant had a present intention to do injury to the persons threatened when he made the threats. The court held that the instruction defendant requested was not required. This is not the issue here, however. The question before the court is not the defendant's subjective intent in mailing the postcard to Ms. Hoeper, but the reaction of a reasonable recipient given the context.[5] *DeShazo* does not address this question.

For these reasons, defendant's motion for judgment of acquittal on count 14 of the indictment should be granted.

The same reasoning should not lead to acquittal on the other four counts of conviction, however. These counts present a situation very similar to that in *United States v. Lincoln,* 589 F.2d 379 (8th Cir. 1979). The defendant there had written to the judges of the Eighth Circuit expressing dissatisfaction with the appellate process and threatening to kill them. He argued that this letter was speech protected by the First Amendment, relying upon *Watts v. United States, supra.* The court found this reliance on *Watts* misplaced. It stated:

> The facts in the present case in no way raise similar issues of free speech and political expression. Although defendant's letter bitterly denounced the appellate process and stressed what defendant viewed as judicial indifference to the suffering of prisoners and their families, the letter also contained explicit threats. This criticism of the court at most raised an issue of fact for the jury as to the nature of the letter, a fact which the jury resolved against defendant.

4. The opinion states the following facts. The defendant had two prior convictions for threatening the life of the president. He had been living at a San Antonio halfway house and sent his communication about the senators to a magistrate in San Antonio. The magistrate may have had reason to be familiar with the earlier convictions, but in any event, the message would likely have been reported by a judicial officer in these circumstances to federal law enforcement authorities. This situation is distinguishable from the present case.

5. The issue here is not the actual, subjective response of the recipients of the communications. The government notes that defendant argued before trial that the recipients' responses should be excluded, but that he seems now to be arguing that the response of Ms. Hoeper is relevant. This apparent conflict in defendant's positions is immaterial in light of the applicable objective standard for what is a threat within the meaning of the statute.

*Lincoln,* 589 F.2d at 382. *See also United States v. Velasquez,* 772 F.2d 1348, 1356–58 (7th Cir.1985), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1976).

Here, defendant's letters which are the subject of counts 4, 7, 9, and 16 each direct language toward the recipient which could reasonably be found threatening. The jury was instructed concerning the First Amendment, and it was within its province to determine whether the letters were threats. *See United States v. Crews,* 781 F.2d 826, 831–32 (10th Cir.1986).

Freedom of speech is not absolute. True threats to cause physical injury are not protected speech. *See United States v. Kelner,* 534 F.2d 1020, 1024–28 (2d Cir.), *cert. denied,* 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976). At trial, the defendant complained that he had been the victim of assaults because threatening words spoken to him at various times had put him in immediate fear for his physical safety. Although threats and verbal assaults use only language or speech, the effect is to cause injury to another person. Words are part of the communicative interaction between persons, and they can constitute threatening conduct or unprotected speech acts which may have an effect as direct as a punch in the jaw. *See Hammond v. Adkisson,* 536 F.2d 237 (8th Cir.1976) (fighting words); *United States v. Kelner, supra,* 534 F.2d at 1026 (climate of violence created by true threats of injury). The four remaining counts of conviction were properly submitted to the jury for consideration of their alleged threatening nature in light of the First Amendment.

## ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. defendant's motion for a new trial is denied;

2. defendant's motion for arrest of judgment is denied;

3. defendant's motion for judgment of acquittal on counts 4, 7, 9, and 16 is denied;

4. defendant's motion for judgment of acquittal on count 14 is granted, and that count is dismissed.