UNITED STATES of America, Plaintiff,

v.

Loren Francis BELLRICHARD, Defendant.

Crim. No. 4–91–25.

United States District Court, D. Minnesota, Fourth Division.

July 29, 1992.

---

Elizabeth de la Vega, Asst. U.S. Atty., for plaintiff.

Scott Tilsen, Federal Public Defender, Minneapolis, Minn., for defendant.

MEMORANDUM OPINION
AND ORDER

DIANA E. MURPHY, District Judge.

I.

On October 9, 1991, the jury returned a verdict finding defendant guilty on five counts of mailing threatening communications in violation of 18 U.S.C. § 876, not guilty on nine counts of mailing threatening communications, and not guilty on two counts of damaging buildings with an explosive device in violation of 18 U.S.C. § 844(i). On November 27, 1991, 779 F.Supp. 454, defendant's motion for judgment of acquittal on count 14 was granted on constitutional grounds, and that count was dismissed. Defendant's motion for judgment of acquittal or a new trial was denied on the other counts of conviction.

There followed a lengthy pre-sentence investigation and a court-ordered psychological and psychiatric examination of the defendant by Dr. Carl Malmquist. After Dr. Malmquist's report was received, together with the report of his consulting psychologist, Dr. Owen Nelson, the parties submitted their positions with respect to sentencing, including a motion for a downward departure by defendant and a motion for an upward departure by the government. The government also requested an evidentiary hearing to address the issue of the defendant's dangerousness as it relates to the likelihood that he will commit future crimes. This request was denied prior to receipt of a report by the government's proposed witness, Dr. Park Elliott Dietz, but an evidentiary hearing was subsequently held on June 29 and 30, 1992. At the hearing, the government called Dr. Dietz to testify. The defendant called Dr. David Lykken as his witness; he also submitted written reports by Dr. Lykken, Dr. Dennis Philander, and Dr. Daniel E. Dossa. The court called Dr. Malmquist. At the conclusion of the hearing, counsel presented oral argument concerning their positions on the sentencing guidelines and possible departure issues.

There is an extended record in this case which the court has carefully studied. It includes the evidence from the four week trial, correspondence from the defendant and others, expert reports and sentencing testimony, and the arguments of counsel.

II.

After the presentence report (PSR) was received, the defendant objected to its conclusions about the applicable guidelines.[1] Objections were not received from the government.

Defendant has three basic quarrels with the calculations. He disputes paragraphs 44–47 involving adjustments to the offense level. He argues that the base offense level should be adjusted downward 4 points for counts 7 and 9 because the letters in those counts were single instances evidencing little deliberation. He disputes paragraphs 40, 48, 54, 60 and 66 involving obstruction of justice. He argues that a two level enhancement for obstruction of justice should not apply because his letters to the prosecutor and court personnel simply protested his innocence and made no direct threats. He also disputes paragraphs 83–86 and 90 involving criminal history. He argues that his prior conviction in state court for harassment is related to his offense conduct here and should not be counted in determining his criminal history category.

 The letters which are the subject of counts 7 and 9 are not single instances evidencing little or no deliberation warranting a four level reduction under guideline section 2A6.1(b)(2). The defendant may have impulsively decided to write Lee Leubbe (count 7) and law enforcement officials (count 9), but the process of obtaining

---

1. Before the final PSR was issued, defendant also expressed objections to certain of its findings with respect to offense conduct. The PSR was revised to satisfy most of these objections. In his sentencing position paper, defendant does not identify any particular objections to the findings in the final revised PSR. At this point in the proceedings, the court adopts the factual statements contained in the PSR, together with the findings in this memorandum opinion and order, as its findings of fact.

an address, conveying his thoughts onto paper, taking that paper to a mailbox, and mailing the letter shows the deliberation that was involved. This process is different than making a single oral threat on the spur of the moment, or other conduct which might warrant the reduction. Moreover, given the volume and nature of defendant's written communications, the conduct in either of these counts could hardly be viewed as a "single instance" under the guidelines.

■ Defendant should receive a two level enhancement on each count for obstruction of justice. His extensive communications to the prosecutor and court personnel appropriately include his critical commentary on the justice system and the law; they also contain protestations of innocence. The communications go far beyond this, however. For example, defendant wrote to the prosecutor, "Now drop all the charges or God will drop you." "If you don't [drop the charges] then do not blame me if and or when the shit hits the fan. 'Boom'! may go your house if you do not listen to my wise words like Bill Nierengarten and Jim Mork foolishly didn't." "I love you too much to wish to see you killed you can run (all of you) but you can't hide. God knows you framed me." His writings to the court while awaiting sentencing include the following: "You either be merciful or you'll be dead." "You have until November (before Thanksgiving) to save your home and ass by freeing me totally without any restrictions. I have spoken. Give me liberty or God will give you death!" "You've got nothing to fear as long as I'm free by April 1, 1992. Not everybody is willing to let me get framed without a counterattack apparently. God and God's helpers are looking out for me. Free me and live!" Guideline section 3C1.1 applies when a defendant willfully attempts to obstruct or impede the adminis-

tration of justice during the investigation, prosecution, or sentencing of an offense. Defendant has by such acts obstructed justice within the meaning of the guidelines.

■ Defendant's prior conviction for harassment is not related to this case under the guidelines and should be counted in calculating his criminal history. A case is related if it is "part of a single common scheme or plan." Guideline section 4A1.2, application note 3. Both the prior case and the present involve threatening or harassing letters, but the victims were different, the letters were written and mailed at different times, and they involve different subjects. Defendant's prior case was not a related case under guideline section 4A1.2(a)(2) and should be included in his criminal history computation.[2]

After full consideration the court agrees with the manner in which the PSR has calculated the guidelines.

### III.

■ The government moves for an upward departure to the maximum sentence permitted by statute, 5 years on each count to be served consecutively for a total of 20 years. The government presents five arguments in support of this motion. It contends that the guidelines do not adequately reflect the egregious nature of the defendant's attempt to obstruct justice through letters to the prosecutor, judge, and victims. It argues that the guidelines did not foresee the volume or prolonged period of time over which the victims here were subjected to threatening letters. It contends that the timing of letters in proximity with the bombings increased the perceived likelihood that defendant would carry out his threats. It argues that the guidelines do not account for the situation where letters are sent to state judges and prosecutors,

---

**2.** The defendant also argues that the victim impact section of the PSR should be deleted because the Probation Office refused to disclose to his counsel the identities or full statements of the victims whose feelings are described, so that he has no means of challenging the accuracy of any particular statement. The victims who provided statements requested anonymity based on

their prior experiences with the defendant. The section merely describes feelings of the victims about the defendant. The statements are not offered or considered to prove anything about the defendant himself and thus need not be tested for their truth. A legitimate reason for anonymity has been advanced, and the section should not be deleted from the PSR.

who are not the type of victim noted in the official victim adjustment provision. Finally, the government argues that an upward departure is appropriate because defendant's criminal history does not adequately reflect the likelihood that he will commit future crimes.

Under the guidelines, obstruction of justice includes threatening witnesses and jurors, suborning perjury, producing counterfeit documents during investigation, destroying or concealing evidence, and providing materially false information to the court or a law enforcement officer. Guideline section 3C1.1, application note 3. While defendant's attempt to obstruct justice by threats has been serious, so are these other forms of obstruction listed in the guidelines. Defendant's guidelines have been enhanced two levels on each count. This recognizes the seriousness of the threatening behavior, but it also must be remembered that much of his communication consists of protected speech. The enhancement already calculated is sufficient to address that conduct found obstructive.

The court is sympathetic to the concerns expressed by recipients of defendant's threatening or disturbing letters, but nevertheless believes that the calculated guideline range is sufficient recognition of the seriousness of the offense behavior in respect to timing or volume. The range reflects a considerable period of incarceration. Although the guideline section for threatening communications, section 2A6.1, includes a six level enhancement if the defendant engaged in any conduct evidencing an intent to carry out his threats, this enhancement does not apply because of the absence of sufficient proof.

■ Neither is an upward departure warranted based on the fact that certain victims were public officials not included in the guidelines enhancement, section 3A1.2, which covers law enforcement officers but not state court judges or county prosecutors. This three level enhancement has already been applied to count 9, the letter to Austin police officers John Carlin and Larry Moeykens. Under guidelines chapter 3, part D (multiple counts), even if the enhancement were applied to the other three counts, it would not increase defendant's total adjusted offense level. The guidelines state that for certain high level official victims not covered by section 3A1.2, for example the President or Vice-President, a three level upward departure should be made. On the other hand, as defendant argues, writing public officials is important to the democratic process and of particular concern under the First Amendment. The motion for an upward departure based on additional official victims should be denied.

■ The government's final argument for an upward departure is that defendant's criminal history does not adequately account for the likelihood that he will commit future crimes. This argument has been the focus of the evidentiary hearing and much reflection by the court on the nature of the record.

The prosecution believes that the defendant is guilty of the charged bombings. In her argument at the close of the evidentiary hearing, counsel for the government stated that the evidence at trial made it clear and convincing, if not beyond a reasonable doubt, that defendant committed the bombings. The court is not persuaded, however, that the government has proven that by any standard. The evidence at trial did show motive and opportunity, but it was not sufficient to prove that defendant made and placed the explosive devices. The court does not believe therefore that the bombings should be considered as relevant conduct or evidence of defendant's dangerousness.

The evidentiary hearing in June offered the testimony of several experts who differed as to a possible diagnosis of defendant and as to likelihood of dangerous behavior in the future. The evidence of the government's expert, Dr. Dietz, was quite interesting and reflects a laudable attempt to find some reliable means of predicting dangerousness, something which has eluded medical and legal experts.

Dr. Dietz is a well-qualified psychiatrist, but his study and report did not persuade

the court of its predictive potential in the context of this sentencing. His model is designed to predict the likelihood of approach to certain individuals. He does not purport to predict what would occur on approach. In his study he used the limited type of underlying data available, relating to approaches to officials in Washington, D.C. and to celebrities in California. It does not appear to the court that his model can establish the likelihood of the defendant's dangerous behavior in the future.

None of the experts could rule out the possibility of dangerous behavior by the defendant, but the likelihood that he would commit future crimes was not established. The bombing evidence has already been discussed, but a real question does remain whether defendant will continue to send threats through the mail. Dr. Malmquist noted that defendant is a compulsive letter writer, but he agreed with the written report of Dr. Philander that the defendant can control the content of his letters when he chooses. For example, when he writes to a newspaper he avoids profanity and insult. At the evidentiary hearing, the defendant stated from counsel table, "I get the point, I'll never fuckin' do that again, you'll send me to prison." Defendant's guidelines provide for a term of supervised release which is particularly appropriate due to the volume and nature of his threatening communications in the past. A standard condition of supervised release is not to violate the law, and if he wishes to avoid serving any extra period of imprisonment, he must not continue to send threats to others.

In sum, the court is not persuaded that it should depart upward based on any of the grounds asserted or taking them as a whole.

## IV.

The defendant moves for a downward departure to a sentence of time served.[3] He bases this motion on six arguments. First, he contends that the criminal history

is greatly overstated. It includes two misdemeanor convictions barely within the ten year period and four history points for his earlier conviction for harassment similar to the present offense conduct. Second, there is a total absence of conduct evidencing an intent to carry out any threats in the letters, so the spirit of section 2A6.1 should result in a shorter sentence. Third, he wrote the letters concerning public issues in order to avoid what he perceived as greater harms and this is pertinent under section 5K2.11. Fourth, the charges for threatening letters would never have resulted in federal prosecution but for the bombing charges, and the charges were delayed for years after certain letters were written. Fifth, defendant's reduced mental capacity should result in a lower sentence. Finally, the defendant argues that he was forced to defend himself against a false charge, the bombings; lengthy pretrial incarceration and trial on an offense not committed should result in a reduced sentence.

Defendant's criminal history is properly calculated for consideration in sentencing. The spirit of section 2A1.6 is met by applying the base offense level of 12, without an increase for conduct evidencing an intent to carry out the threats or a decrease for a single instance evidencing little or no deliberation.

 Section 5K2.11 does not provide a basis for a downward departure here. It permits a departure when a crime has been committed in order to avoid a perceived greater harm, but only where the interest in punishment is reduced because of the circumstances of the crime, for example, a mercy killing. In his letters defendant may have addressed matters of public concern, but the threatening character of the letters for which he was convicted should not be minimized and was not necessary for his message to be communicated.

 Defendant speculates that the threatening communication counts would never have been brought except for the

---

**3.** He has also expressed objection to imposition of any conditions upon his release such as pro- bation or supervised release.

bombing charges, and he argues that the delay in prosecution, the lack of federal interest in the letters, and being forced to defend himself against false charges should result in a reduced sentence. The evidence did not necessarily demonstrate "that the wrong person was charged," as defendant contends. The verdict returned on some of the counts was that defendant was not guilty, not that he was innocent. Although the court has indicated that it was not persuaded that defendant committed the bombings, that does not mean that there was not evidence to support those charges. The counts charging threatening letters were not completely unrelated to the bombing charges, and the fact that the indictment included all these charges does not provide a basis for a downward departure.

■ A departure under 5K2.13 may be granted where a defendant commits an offense "while suffering from significantly reduced mental capacity," and then to "the extent to which reduced mental capacity contributed to the commission of the offense," but there is a split among the circuits as to whether a sentence may be reduced based on diminished capacity following conviction for a threatening communication.[4] For purposes of this sentencing, the court will assume it has authority to consider a departure under 5K2.13.

There are conflicting diagnoses concerning the mental condition of the defendant, but it is apparent from the expert reports that he is not without capacity to control the content of his letters or to tailor each to what he intends to express to the particular recipient. He has maintained all along that he said what he meant and meant each word that he said. He was most aware and lucid when testifying at trial and defended his letters on absolutist First Amendment grounds. Whatever his overall psychiatric diagnosis, the record does not indicate that defendant is suffering from significantly

reduced mental capacity within the meaning of this guidelines section. The court declines to depart downward based on section 5K2.13.

In sum, the court concludes that a downward departure below the guideline range is not appropriate in this case.

## V.

This is a troubling case in many ways. An unusual amount of time has transpired between conviction and sentencing, for the reasons discussed in earlier orders. The court has received a large volume of mail concerning this case, particularly from the defendant (over 125 letters and postcards to this court since trial), but also from others. Some writers indicate that they fear the defendant; they are recipients of letters or attention which have disturbed and affected their lives. Some writers indicate they cannot understand how the defendant can be imprisoned merely for writing letters, especially to public officials. There is no indication, however, that this latter group has ever seen the content of the letters in question.

Letter writing and expression of ideas has very strong support in the First Amendment. Defendant takes an absolutist view of First Amendment rights and does not seem to recognize or care that he could be infringing on the rights of others by his communications. He believes that he has the constitutional right to say or write absolutely anything; if anyone chooses to interpret his writings as threats, it is that individual's problem, not his. Many of his letters contain threats and profanity; some approach pornography. Many also reflect a lively intelligence and a sense of humor and discuss literature, political events, the environment, girls' sports, or other subjects in which defendant has an interest. They are in all respects unusual letters.

4. In *United States v. Philibert*, 947 F.2d 1467 (11th Cir.1991), a downward departure was permissible where the offense was a threatening telephone call which was non-violent and not excluded by the terms of section 5K2.13. On the other hand, *United States v. Poff*, 926 F.2d 588 (7th Cir.1991) (en banc), held that mailing threatening letters was not a non-violent offense, and thus the sentencing court had no authority to depart downward under section 5K2.13.

There are many competing factors in this complex sentencing. The defendant should not be sentenced for what has been noted to be his bizarre appearance or eccentric lifestyle. The defendant was convicted of sending threats through the mail. Although the government believes that he acted to carry out some threats, this was not established at trial. Nevertheless, there is a pattern of threats, frequently found in letters also containing protected speech. Protection of the public is an important factor to be considered.

After much thought and study of the record, the court has reached the conclusions which best seem to meet the goal of justice under all the circumstances. The range set by the guidelines applicable to this situation is sufficient, but nòt greater than necessary, to satisfy the recognized purposes of sentencing.

## ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. The court adopts the factual statements contained in the presentence investigation report and this memorandum opinion and order as its findings of fact at this stage of the proceedings.
2. The court determines that the applicable guidelines are:
 Total Offense Level: 21
 Criminal History Category: III
 46 to 57 months imprisonment
 2 to 3 years supervised release
 $7,500 to $75,000 fine (plus cost of imprisonment or supervision)
 $200 special assessment.
3. The motion by the government for an upward departure is denied.
4. The motion by defendant for a downward departure is denied.