**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Loren Francis BELLRICHARD, Defendant–Appellant.**

No. 94–3439.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1995.

Decided Aug. 8, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 22, 1995.[*]

---

[*] Morris Sheppard Arnold, Circuit Judge, would grant the suggestion for rehearing en banc. Murphy, Circuit Judge, took no part in the consideration or decision of this case.

Dennis D. Fisher, U.S. Attorney's Office, Fargo, ND, for plaintiff-appellee.

Loren Francis Bellrichard, pro se.

James Erwin Ostgard, II, Minneapolis, MN, for defendant-appellant.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Loren Francis Bellrichard appeals from his conviction of 17 counts of mailing threatening communications in violation of 18 U.S.C. § 876 (1988). Bellrichard was convicted of mailing threatening communications to the Assistant United States Attorney who prosecuted him in an earlier case and the district court judge who tried the earlier case. Bellrichard argues that his conviction should be reversed on two grounds: (1) the district court[1] committed reversible error in refusing to give a specific unanimity instruction; and (2) the threatening communications statute abridges free speech in violation of the First Amendment to the United States Constitution. He also argues that the district court erred in sentencing him by: (1) finding that he engaged in conduct evidencing an intent to carry out his threats and applying the six-level increase provided for by United States Sentencing Guidelines § 2A6.1(b)(1) (Nov.1994); and (2) applying a multiple count adjustment to a group of counts of conviction which consisted of offense conduct already used to enhance a previous sentence. We affirm the conviction and the sentence imposed by the district court.

In September and October 1991, Bellrichard was tried on 14 counts of mailing threatening communications and two counts of damaging buildings with an explosive device. United States v. Bellrichard, 779 F.Supp. 454 (D.Minn.1991). The case was tried before then Chief District Judge Diana Murphy, and Assistant United States Attorney Elizabeth de la Vega was the prosecutor. Id. at 456. Bellrichard was acquitted of two bomb counts, but convicted of five counts of mailing threatening communications. Id. Bellrichard was sentenced after Judge Murphy vacated one of the convictions. Id. at 460; United States v. Bellrichard, 801 F.Supp. 263

(D.Minn.1992) (Bellrichard's sentencing for 1991 convictions). Bellrichard appealed, and we affirmed. United States v. Bellrichard, 994 F.2d 1318 (8th Cir.) (Bellrichard I ), cert. denied, —— U.S. ——, 114 S.Ct. 337, 126 L.Ed.2d 282 (1993).

De la Vega began receiving the letters which led to Bellrichard's instant convictions shortly after Bellrichard's arrest on the first charge in 1991, and sometime shortly thereafter Judge Murphy began receiving threatening letters. The letters consisted of some 275 individual postcards and lengthy letters, and contained direct and indirect threats to kill, burn and bomb Judge Murphy and de la Vega. The letters continued even after Bellrichard commenced serving his sentence for the 1991 convictions.

In March 1994, Bellrichard was indicted on twenty-four counts of delivering threatening communications based on the letters mailed to Judge Murphy and de la Vega, between April 1991 and January 1994. At trial, all of the letters were introduced into evidence, and both Judge Murphy and de la Vega testified about receiving the letters and being concerned and fearful as a result of the letters. William Clarke, who was imprisoned with Bellrichard at the Terre Haute federal prison, testified that Bellrichard made comments to him about Judge Murphy and a female prosecutor, whose name Clarke could not recall. Clarke testified that after the indictment was returned in the instant case "he [Bellrichard] was real upset" and "said that he should kill them [the judge and prosecutor] himself."

Bellrichard testified and stated that he was only trying to make the point that he had the absolute right to say anything he wanted to, and to persuade these powerful people to become more merciful and just. He said his intention was to petition for redress of his grievances for his previous convictions. He expressed concerns over trends toward fascism in the United States and his beliefs concerning the current political and social conditions. He denied any intention to cause the judge or the prosecutor to fear physical

1. The HONORABLE RICHARD H. BATTEY, Chief United States District Judge for the District of South Dakota, sitting by designation.

harm, and denied planning to do anything to the judge or prosecutor in retaliation for the 1991 convictions. He denied making the statements to Clarke that the judge and prosecutor should be killed, or that he should kill them.

The trial lasted approximately two and one-half days, and the jury deliberations took an equal amount of time. The jury found Bellrichard guilty of seventeen counts and acquitted him of seven. The district court imposed a sentence of eighty-seven months.

## I.

First, Bellrichard contends that the district judge committed reversible error when he instructed the jurors that they could disagree about which language within each letter constituted a threat, so long as they unanimously agreed that the letter taken as a whole was threatening.

During jury deliberations, Judge Battey received a note from the jury which asked:

> Judge Battey: If one juror believes that one part of a letter is threatening, and a couple of the other jurors believe a different part is threatening, and the rest of the jurors believe yet a different part of a letter is threatening, then do we all agree that the letter is threatening and the verdict is guilty, or do we have to all agree on the same threatening sentence in the letter for it to be guilty?

In response to the question, Judge Battey informed the jury that:

> You must unanimously find beyond a reasonable doubt that the letter which you are considering contains a threat as defined in the Court's instructions. While you may disagree as to various parts of the language used, nonetheless you must consider the letter as a whole, since the whole letter is the result of the sum of its parts.

Bellrichard argues that Judge Battey's response to the jury's question resulted in a verdict that violated his right to a unanimous verdict. *See* Fed.R.Crim.P. 31(a).

The indictment in the present case charged Bellrichard with twenty-four counts of mailing threatening communications, based on twenty-four of the letters and post-

cards Bellrichard mailed to Judge Murphy and de la Vega. None of the counts in the indictment specified which portions of the letters or postcards constituted threatening communications. However, it is "a long-established rule of the criminal law that an indictment need not specify which overt act, among several named, was the means by which a crime was committed." *Schad v. Arizona,* 501 U.S. 624, 631, 111 S.Ct. 2491, 2496, 115 L.Ed.2d 555 (1991) (plurality opinion); Fed.R.Crim.P. 7(c)(1). In returning general verdicts " 'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.' " *Id.* at 631–32, 111 S.Ct. at 2497 (quoting *McKoy v. North Carolina,* 494 U.S. 433, 449, 110 S.Ct. 1227, 1236, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring)). "[T]here is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Id.* at 632, 111 S.Ct. at 2497.

Furthermore, the district court's instruction is consistent with the language of the statute. The threatening communications statute provides in relevant part:

> Whoever knowingly so deposits [in any post office or authorized depository for mail matter] or causes to be delivered [by the Postal Service according to the direction thereon] ... *any communications* with or without a name or designating mark subscribed thereto, addressed to any other person and *containing ... any threat* to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 876 (emphasis added). In order to accept Bellrichard's argument, we would have to read the statute's use of the term "communications" as a reference to isolated phrases or words contained in a communication, rather than to the communication as a whole. Such a reading would be contrary to the plain meaning of the statute. As the district judge pointed out, a letter or communication "is the result of the sum of its parts." In order to comprehend the message contained in a letter or communication, one

must consider the letter or communication as a whole.

The district judge's original instructions quoted the language of the statute, and in addition stated that, to convict Bellrichard of violating the statute, the jury had to find that: (1) he knowingly or willfully; (2) mailed a communication; and (3) the communication contained a threat to injure. Both the district judge's original instructions and his answer to the jury's question instructed the jury that they must unanimously agree that Bellrichard committed the essential elements of the crime, including the existence of a threat to injure. Nothing more was required.

*United States v. Holley,* 942 F.2d 916 (5th Cir.1991), a case which Bellrichard relies upon heavily, is inapposite. In *Holley,* the court reversed a perjury conviction because it feared that the jury might have interpreted the district court's instruction to mean that they were not required to unanimously agree on the ultimate factual issue in the case, which was whether Holley knowingly made a false and material declaration while under oath. *Holley,* 942 F.2d at 929. In the present case, although the jurors may have disagreed as to which portions of particular letters were threatening, we have no reason to believe that the jury did not unanimously agree on the ultimate factual issue, which was whether each letter or postcard was a threatening communication in violation of 18 U.S.C. § 876.

Bellrichard also argues that the district court's instruction permitted his conviction in violation of the First Amendment, and rendered the statute under which he was convicted unconstitutionally vague as applied.

We have concluded that the district court properly instructed the jury as to what was required in order for them to convict Bellrichard of violating the threatening communications statute. In section II of this opinion, we conclude that the threatening communications statute does not unconstitutionally abridge free speech. Thus, Bellrichard's argument that the district court's instruction caused him to be convicted in violation of the First Amendment is without merit.

Furthermore, Bellrichard does not argue that the statute is vague and overbroad, except as the district court interpreted the statute in this case. As we have concluded that the district court's instruction was proper, we also reject Bellrichard's argument that the instruction rendered the statute vague as applied.

## II.

■ Second, Bellrichard argues that the threatening communications statute, 18 U.S.C. § 876, abridges free speech in violation of the First Amendment. The Supreme Court has rejected the " 'view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.' " *Wisconsin v. Mitchell,* —— U.S. ——, ——, 113 S.Ct. 2194, 2199, 124 L.Ed.2d 436 (1993) (quoting *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968)). In *Bellrichard I,* we rejected Bellrichard's argument that the letters that were the basis for his 1991 convictions were protected by the First Amendment. 994 F.2d at 1324. We commented that "[t]he First Amendment affords no protection to those who utter direct threats of force and violence toward other persons." *Id.* at 1322; *R.A.V. v. City of St. Paul,* 505 U.S. 377, 388, 112 S.Ct. 2538, 2546, 120 L.Ed.2d 305 (1992) ("threats of violence are outside the First Amendment"). Thus, the statute's prohibition on the mailing of threatening communications does not violate the First Amendment.

## III.

■ Third, Bellrichard asserts that the district court's finding at sentencing that he "engaged in ... conduct evidencing an intent to carry out his threat[s]" is clearly erroneous, and that, therefore, the court's application of USSG § 2A6.1(b)(1) was improper. "We review the district court's finding of facts for clear error and its application of the guidelines to the facts de novo, giving due deference to the district court's application of the guidelines." *United States v. Saknikent,* 30 F.3d 1012, 1013 (8th Cir.1994).

USSG § 2A6.1(b)(1) provides that if a violation of the threatening communications statute "involved any conduct evidencing an intent to carry out such threat," the offense level should be increased six levels from the base offense level of twelve. In concluding that the six level increase was appropriate in the present case, the district court stated:

> based upon the language of the threatening communications, the conduct of the defendant and the statements of the fellow inmate and the continued communications and threatening tones which have continued even after trial leads the Court to conclude that by a preponderance of the evidence the conduct does evidence an intent to carry out the threats contained within the communications ...

Bellrichard cites only one case, *United States v. Philibert,* 947 F.2d 1467 (11th Cir. 1991), in which a district court's imposition of a six-level increase under USSG § 2A6.1(b)(1) was reversed. In *Philibert,* "[t]he sentencing judge applied the six-level increase, but did not make any express finding that the appellant had 'engaged in any conduct evidencing an intent to carry out such threat.'" *Id.* at 1471. Upon its own examination of the record, the court concluded that no evidence supported a section 2A6.1(b)(1) six-level increase. *Id.* Thus, the court remanded the case for a new trial with specific direction that, if there was a new conviction, the district court should not apply the six-level increase unless additional evidence was submitted. *Id.*

In the case before us, the district court fully considered the evidence and expressly found that a six-level increase was appropriate. The district court's conclusion was supported by the evidence. Thus, we see no basis for concluding that the district court's finding was clearly erroneous.

 We also reject Bellrichard's argument that the district court erred in failing to grant an evidentiary hearing. "A formal sentencing hearing is not, however, the exclusive means by which the government may meet [its evidentiary burden]." *United States v. Fetlow,* 21 F.3d 243, 250 (8th Cir.), *cert. denied,* ── U.S. ──, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994). In concluding that Bell-

richard's conduct evidenced an intent to carry out his threats, the district court judge relied upon evidence presented at trial. A district court judge may make "findings based on evidence presented at the trial phase even though no additional exhibits or testimony are introduced at the sentencing phase." *Id.*

### IV.

 Fourth, Bellrichard argues that the district court erroneously applied a multiple count sentencing adjustment. We review the district court's interpretation and application of guideline terminology to a particular set of facts de novo. *United States v. Manuel,* 912 F.2d 204, 206 (8th Cir.1990).

United States Sentencing Guideline § 3D1.1.(a) (Nov.1994) provides:

> (a) When a defendant has been convicted of more than one count, the court shall:
>
> (1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.
>
> (2) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.
>
> (3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

The district court applied the multiple count adjustment in accordance with USSG § 3D1.1.(a), and the result was a two level increase in Bellrichard's offense level.

The communications which were the basis for Counts 1 through 12 of the indictment in the present case were also used as the basis for a two level "obstruction of justice" enhancement at Bellrichard's sentencing for his 1991 convictions. *Bellrichard,* 801 F.Supp. at 266. Bellrichard contends that the district court's reliance upon counts based on the same conduct Judge Murphy relied upon in giving him a two level "obstruction of justice" enhancement at his 1991 sentencing places him in double jeopardy.

In *Witte v. United States,* ── U.S. ──, ──, 115 S.Ct. 2199, 2205, 132 L.Ed.2d 351

(1995), decided after this case was argued, the Supreme Court "rejected the claim that double jeopardy principles bar a later prosecution or punishment for criminal activity where that activity has been considered at sentencing for a separate crime." Witte plead guilty to a federal marijuana charge, and in sentencing Witte, the district court considered uncharged criminal conduct as "relevant conduct" under the Sentencing Guidelines. *Id.* at ——, 115 S.Ct. at 2203. Witte was later indicted for the criminal conduct which the district court considered as "relevant conduct" in sentencing him for his marijuana conviction. *Id.* The district court dismissed the indictment on the grounds that it violated the Double Jeopardy Clause of the Fifth Amendment, but the Fifth Circuit Court of Appeals reversed. *Id.* at ——, 115 S.Ct. at 2204. In affirming, the Supreme Court reasoned that "[b]ecause consideration of relevant conduct in determining a defendant's sentence within the legislatively authorized punishment range does not constitute punishment for that conduct, the instant prosecution does not violate the Double Jeopardy Clause's prohibition against the imposition of multiple punishments for the same offense." *Id.* at ——, 115 S.Ct. at 2209.

The argument the Supreme Court rejected in *Witte* is the same argument now advanced by Bellrichard. *Witte* compels us to reject Bellrichard's double jeopardy argument.

For the foregoing reasons, we affirm the judgment of the district court.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

In *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970), the Supreme Court held that due process requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." It is also familiar law that, in a federal court, a jury must be unanimous in finding a defendant guilty before he or she can be convicted. *See* Fed.R.Crim.P. 31(a). It seems apparent to me that we do not know whether the jurors in this case all agreed that particular language was threatening. If they did not, then defendant was not legally convicted.

With respect, I believe that the court's reliance on *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion), is misplaced. The issue there was whether a general verdict of guilty on alternative charges of premeditated murder and felony murder contained in a single count could be upheld. *Id.* at 631, 111 S.Ct. at 2496. The Court said that it could, but the case has no relevance to ours, since here only one crime is charged in each count. A plurality of the Court in *Schad* quoted *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S.Ct. 1227, 1236, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring), to the effect that " 'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.' " *Schad*, 501 U.S. at 631–32, 111 S.Ct. at 2497. But that is permissible only if the facts on which the jurors disagree are inconsequential. If, for instance, half the jury believes that a defendant committed burglary by entering a building with a chisel and the other half believes that he or she entered with a knife, or a key, or some other instrument, but all agree that the defendant did not have the relevant party's permission to enter, then the unanimity requirement is not violated, because all jurors agree that illegal means were employed to effect the entry. That is not our case. Our case is analogous to a charge that a defendant burgled two different houses, and it would hardly do to suppose that a verdict could be upheld unless the jury was instructed that it had to agree unanimously with respect to a particular burglary before it could convict with respect to it.

The district court's instruction in response to the jurors' quite explicit question was ambiguous and unresponsive to their quandary. It is certainly true, as the judge said, that in an appropriate case the jury "must consider the letter as a whole," if by that the judge meant that one cannot take statements out of their context, because context supplies meaning, and the meaning of the defendant's statements was the factual issue at hand. But that was not the difficulty that the jurors were experiencing. They disagreed as to whether certain language (presumably in context) was threatening. It is entirely pos-

sible here that some jurors thought that one paragraph or sentence of a letter was threatening and others thought that another was. But that simply means that some thought that defendant committed a crime at one time and one place and others thought that he did so at another time and another place. These are distinct events and distinct crimes, like burglaries at different houses owned by the same person.

The court has recast the charge against the defendant by characterizing the "ultimate factual issue" as "whether each letter or postcard was a threatening communication." With respect, the ultimate factual issue in this case, properly conceived, was whether certain language in each letter or postcard constituted a threat.

I find the case of *United States v. Holley*, 942 F.2d 916 (5th Cir.1991), entirely on point and convincing. There the court held that a unanimity instruction is required when several statements are charged as perjurious in a single count in an indictment. *See id.* at 928–29. What the *Holley* court was saying was that the unanimity requirement cannot be circumvented by the simple expedient of charging a defendant with having lied under oath sometime during his testimony. What the court allows here is precisely analogous, for it upholds a conviction essentially on a charge that a defendant has made a threat somewhere in a letter. That is not the precision that Fed.R.Crim.P. 31(a) envisions.

I have had a look at all of the letters and postcards that formed the basis of defendant's convictions, and cannot say that any one of them was not capable of generating the kind of difference of opinion that the jury reported that it was experiencing. I therefore respectfully dissent and would reverse the convictions.